1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 LITA MARTINEZ,                    ) | Case No.  ED CV 14-846-SP |
| 12          Plaintiff,              ) | |
| 13      v.                          ) | MEMORANDUM OPINION AND |
| 14 CAROLYN W. COLVIN, Acting        ) | ORDER |
| Commissioner of Social Security     ) | |
| 15 Administration,                  ) | |
| 16          Defendant.              ) | |
| 17 ——————————————————————————       ) | |

18                              **I.**

19                      **INTRODUCTION**

20          On May 2, 2014, plaintiff Lita Martinez filed a complaint against defendant,

21  the Commissioner of the Social Security Administration ("Commissioner"),

22  seeking a review of a denial of a period of disability, disability insurance benefits

23  ("DIB"), and supplemental security income ("SSI").  Both plaintiff and defendant

24  have consented to proceed for all purposes before the assigned Magistrate Judge

25  pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

26  adjudication without oral argument.

27          Plaintiff presents four disputed issues for decision:  (1) whether the

28

1   Administrative Law Judge ("ALJ") properly rejected the opinion of examining

2   physician Dr. Adam Cash; (2) whether the ALJ properly considered plaintiff's

3   credibility; (3) whether the ALJ properly considered the opinion of a lay witness;

4   and (4) whether the ALJ erred at step five.  Memorandum in Support of Plaintiff's

5   Complaint ("P. Mem.") at 3-13; Memorandum in Support of Defendant's Answer

6   ("D. Mem.") at 2-12.

7        Having carefully studied the parties's moving papers, the Administrative

8   Record ("AR"), and the decision of the ALJ, the court concludes that, although the

9   ALJ properly discounted plaintiff's and the lay witness's credibility, the ALJ

10  improperly rejected the opinion of plaintiff's examining physician without

11  providing specific and legitimate reasons supported by substantial evidence for

12  doing so, and also erred at step five.  The court therefore remands this matter to

13  the Commissioner in accordance with the principles and instructions enunciated in

14  this Memorandum Opinion and Order.

15                                      **II.**

16                    **FACTUAL AND PROCEDURAL BACKGROUND**

17        Plaintiff, who was forty-six years old on the alleged disability onset date,

18  has a ninth grade education.  AR at 154, 173.  She has past relevant work as a bus

19  driver and retail cashier.  *Id.* at 33.

20        On February 14 and 15, 2011, plaintiff filed applications for a period of

21  disability, DIB and SSI due to a shattered ankle, back injury, seizures, short term

22  memory, and depression.  *Id.* at 40-41, 172.  Both applications were denied

23  initially and upon reconsideration, after which she filed a request for a hearing.  *Id.*

24  at 47-52, 57-61, 65.

25        On November 2, 2012, the ALJ held a hearing.  *Id*. at 26-39.  Although

26  plaintiff was represented by counsel at the hearing, she did not attend or testify.

27  The ALJ heard testimony from Dr. Lowell Sparks, a medical expert, and Luis Mas,

28

                                        2

1   a vocational expert ("VE"). *See id.* On December 21, 2012, the ALJ denied

2   plaintiff's claim for benefits. *Id.* at 11-20.

3       Applying the well-known five-step sequential evaluation process, the ALJ

4   found, at step one, that plaintiff had not engaged in substantial gainful activity

5   since August 9, 2010, the alleged onset date. *Id.* at 13.

6       At step two, the ALJ found that plaintiff suffered from the following severe

7   impairments:  status post open reduction and internal fixation on the left ankle

8   fracture; low back pain; a seizure disorder; depression; a mood disorder; and

9   anxiety. *Id.* at 14.

10      At step three, the ALJ found that plaintiff's impairments, whether

11  individually or in combination, did not meet or medically equal one of the listed

12  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

13  "Listings"). *Id.*

14      The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

15  determined that plaintiff had the RFC to perform sedentary work with the

16  limitations that plaintiff can: lift, carry, push, or pull ten pounds occasionally and

17  less than ten pounds frequently; stand or walk for about two hours in an eight-hour

18  workday; sit for about six hours in an eight-hour workday; and climb, stoop, kneel,

19  crouch, and crawl on an occasional basis. *Id.* at 15.  Plaintiff was precluded from

20  work requiring balancing or the use of ladders, ropes, and scaffolds; and must

21  avoid all exposure to extreme cold and hazards such as work around dangerous

22  unguarded machinery or at unprotected heights. *Id.*  The ALJ also limited plaintiff

23

24  _____

25      [1]  Residual functional capacity is what a claimant can do despite existing
    exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,

26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
    evaluation, the ALJ must proceed to an intermediate step in which the ALJ

27  assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486

28  F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  to simple, repetitive tasks that do not require interaction with the general public.

2  *Id.*

3       The ALJ found, at step four, that plaintiff was incapable of performing her

4  past relevant work as a bus driver and retail cashier.  *Id.* at 18.

5       At step five, the ALJ found that there were jobs that existed in significant

6  numbers in the national economy that plaintiff could perform, including lens

7  gauger, table worker, and addresser.  *Id.* at 19.  Consequently, the ALJ concluded

8  that plaintiff did not suffer from a disability as defined by the Social Security Act

9  ("SSA").  *Id.* at 20.

10      Plaintiff filed a timely request for review of the ALJ's decision, which was

11  denied by the Appeals Council.  *Id.* at 1-3.  The ALJ's decision stands as the final

12  decision of the Commissioner.

## III.

## STANDARD OF REVIEW

15      This court is empowered to review decisions by the Commissioner to deny

16  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

17  Administration must be upheld if they are free of legal error and supported by

18  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

19  (as amended).  But if the court determines that the ALJ's findings are based on

20  legal error or are not supported by substantial evidence in the record, the court

21  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

22  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

23  1144, 1147 (9th Cir. 2001).

24      "Substantial evidence is more than a mere scintilla, but less than a

25  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

26  "relevant evidence which a reasonable person might accept as adequate to support

27  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

28

1   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

2   finding, the reviewing court must review the administrative record as a whole,

3   "weighing both the evidence that supports and the evidence that detracts from the

4   ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

5   affirmed simply by isolating a specific quantum of supporting evidence.'"

6   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

7   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

8   the ALJ's decision, the reviewing court "'may not substitute its judgment for that

9   of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

10  1992)).

11                                   **IV.**

12                              **DISCUSSION**

13  **A.   The ALJ Failed to Provide Specific and Legitimate Reasons for**

14       **Rejecting the Opinion of an Examining Physician**

15          Plaintiff argues that the ALJ failed to properly consider the opinion of Dr.

16  Adam Cash, the consultative psychologist.[2]  P. Mem. at 3-5.  Specifically, plaintiff

17  argues the ALJ implicitly rejected Dr. Cash's opinion by failing to adopt his

18  opined limitations.  *Id.*

19          In determining whether a claimant has a medically determinable

20  impairment, among the evidence the ALJ considers is medical evidence.  20

21  C.F.R. §§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

22  regulations distinguish among three types of physicians:  (1) treating physicians;

23  (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.

24  §§ 404.1527(c), (e) 416.927(c),(3); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

25  _____

26       [2]   Psychologists are considered acceptable medical sources whose opinions
     are accorded the same weight as physicians.  20 C.F.R. §§ 404.1513(a)(2),
27   416.913(a)(2).  Accordingly, for ease of reference, the court will refer to Dr. Cash
     as a physician.
28

                                      5

1  1996) (as amended).  "Generally, a treating physician's opinion carries more

2  weight than an examining physician's, and an examining physician's opinion

3  carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

4  F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-

5  (2).  The opinion of the treating physician is generally given the greatest weight

6  because the treating physician is employed to cure and has a greater opportunity to

7  understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th

8  Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

9       Nevertheless, the ALJ is not bound by the opinion of the treating physician.

10 *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

11 ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

12 81 F.3d at 830.  If the treating physician's opinion is contradicted by other

13 opinions, the ALJ must provide specific and legitimate reasons supported by

14 substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

15 specific and legitimate reasons supported by substantial evidence in rejecting the

16 contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

17 non-examining physician, standing alone, cannot constitute substantial evidence.

18 *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

19 *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

20 813, 818 n.7 (9th Cir. 1993).

21       **1.   <u>Dr. Cash</u>**

22       Dr. Cash examined plaintiff on May 25, 2011.  AR at 955-59.  Dr. Cash

23 administered many tests including a complete psychological evaluation and mental

24 status examination.  *Id*. at 956.  During the examination, Dr. Cash observed that,

25 inter alia, plaintiff was tense, cried on and off, was oriented, had pressured speech,

26 and had a labile affect.  *Id.* at 956-57.  Dr. Cash noted that:  plaintiff's

27 performance on the Trails A – Trails B test was indicative of attention and

28

concentration problems; anxiety and mood difficulties interfered with plaintiff's performance on the WAIS-III test, in which her scores were extremely low and likely an underestimate of her cognitive capacity; and she had impaired memory. *Id*. at 957-58.  Accordingly, Dr. Cash opined that plaintiff was experiencing symptoms of generalized anxiety, panic, and a depressed mood, as well as pain and adjustment difficulties.  *Id*. at 959.  Dr. Cash further opined that plaintiff:  had the ability to understand simple instructions but that she would have moderate difficulty remembering and carrying them out; would experience moderate to marked difficulties with concentration, persistence, and pace; had a moderately impaired ability to socialize in the workplace; had a moderate ability to tolerate stress; and was a mild risk for emotional breakdown in the workplace.  *Id.* at 959.

### 2.   **State Agency Physicians**

Two State Agency psychiatrists, Dr. N. Haroun and Dr. D. Funkenstein, examined plaintiff's medical records and Dr. Cash's opinion.  *Id*. at 967-68, 983-85.  Both physicians noted that although plaintiff was not treated by a psychologist, her medical examination reflected problems with anxiety.  *See id*. at 967, 983.  Dr. Haroun opined that there was no evidence that plaintiff had any severe mental impairment for a continuous 12-month period and that plaintiff could perform simple, unskilled tasks in a non-public setting.  *Id.* at 968.  Dr. Funkenstein adopted Dr. Haroun's opinion.  *Id.* at 984.

### 3.   **The ALJ's Findings**

With respect to her mental limitations, the ALJ concluded that plaintiff had the RFC to perform simple, repetitive tasks not requiring interaction with the general public.  *Id.* at 15.  In reaching that determination, the ALJ discussed the findings of Dr. Cash, Dr. Haroun, and Dr. Funkenstein, but did not state the weight he gave to each of the opinions.  *See id.* at 16-17.  Based on his RFC determination, however, it is clear that the ALJ gave great weight to the opinions

1   of the State Agency physicians and far less weight to Dr. Cash's opinion.

2   Plaintiff's RFC as determined by the ALJ simply does not account for the many

3   mental limitations opined by Dr. Cash.

4        Although the ALJ may reject Dr. Cash's opinion and give greater weight to

5   the opinions of the State Agency physicians, the ALJ must provide specific and

6   legitimate reasons supported by substantial evidence for doing so. *Lester*, 81 F.3d

7   at 830-31. Here, the ALJ failed to cite any reasons. Even assuming that the ALJ

8   discounted Dr. Cash's opinion because it was inconsistent with the State Agency

9   physicians' opinions, their opinions, by themselves, cannot constitute substantial

10   evidence. *Widmark*, 454 F.3d at 1067 n.2; *Morgan*, 169 F.3d at 602.

11   Accordingly, the ALJ erred by failing to cite specific and legitimate reasons

12   supported by substantial evidence for rejecting Dr. Cash's opinion.

13   **B.**   **The ALJ Properly Considered Plaintiff's and the Lay Witness's**

14       **Credibility**

15        Plaintiff argues that the ALJ failed to a make proper credibility

16   determinations. P. Mem. at 6-11. Specifically, plaintiff contends that the ALJ

17   failed to provided clear and convincing reasons for discounting her credibility and

18   germane reasons for discounting her daughter's credibility. *Id.*

19       **1.**   **Plaintiff**

20        Plaintiff did not testify at the hearing before the ALJ; however, the record

21   contains her statements to SSA and to medical providers. The ALJ found plaintiff

22   was "only a partially credible witness." AR at 16.

23        The ALJ must make specific credibility findings, supported by the record.

24   Social Security Ruling ("SSR") 96-7p.[3] To determine whether testimony

25

26   _____

27     [3] "The Commissioner issues Social Security Rulings to clarify the Act's
implementing regulations and the agency's policies. SSRs are binding on all

28   components of the SSA. SSRs do not have the force of law. However, because

1   concerning symptoms is credible, the ALJ engages in a two-step analysis.

2   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

3   must determine whether a claimant produced objective medical evidence of an

4   underlying impairment "'which could reasonably be expected to produce the pain

5   or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

6   341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

7   malingering, an "ALJ can reject the claimant's testimony about the severity of her

8   symptoms only by offering specific, clear and convincing reasons for doing so."

9   *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

10  2003).  The ALJ may consider several factors in weighing a claimant's credibility,

11  including:  (1) ordinary techniques of credibility evaluation such as a claimant's

12  reputation for lying; (2) the failure to seek treatment or follow a prescribed course

13  of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

14  1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

15        At the first step, the ALJ found that plaintiff's medically determinable

16  impairments could reasonably be expected to cause the symptoms alleged.  AR at

17  16.  At the second step, because the ALJ did not find any evidence of malingering,

18  the ALJ was required to provide clear and convincing reasons for discounting

19  plaintiff's credibility.   Here, the ALJ discounted plaintiff's credibility because:

20  (1) plaintiff engaged in basic work related activity after her alleged onset date; (2)

21  plaintiff engaged in vigorous exercise at home; (3) plaintiff's seizures were well-

22  controlled with the use of medication; (4) her musculoskeletal complaints were

23  "minimally remediable" with the use of conservative medical management; (5)

24  plaintiff failed to follow up with a primary care physician; and (6) she received

25  _____

26  they represent the Commissioner's interpretation of the agency's regulations, we
    give them some deference.  We will not defer to SSRs if they are inconsistent with

27  the statute or regulations."  *Holohan*, 246 F.3d at 1203 n.1 (internal citations

28  omitted).

1    conservative treatment. *Id.*

2         The ALJ's first ground for an adverse credibility finding was that plaintiff

3    worked after her alleged onset date. *Id.* A plaintiff is not disabled if she can

4    engage in substantial gainful activity. *See Tackett v. Apfel*, 180 F.3d 1094, 1098

5    (9th Cir. 1999). Here, the record reflects that plaintiff earned $3,063.64 in 2011,

6    providing some sort of in-home support service. AR at 163, 167. Other than

7    presumptively being insufficient to constitute substantial gainful activity, it is

8    unclear in what capacity plaintiff worked, for how long, and the duties of her job.

9    Without more information, plaintiff's limited work activity in 2011 is insufficient

10    to discount her symptoms. Indeed, plaintiff may have attempted to work but

11    stopped due to pain or other symptoms. *See Lingenfelter*, 504 F.3d at 1037-38

12    (the fact that a claimant tried to work and failed because of his impairments is not

13    a clear and convincing reason to discount his credibility); *Micci v. Colvin*, 2015

14    WL 1239502, at *9 (C.D. Cal. Mar. 17, 2015) (plaintiff's ability to work three

15    hours a day three to five days a week in home health care is insufficient to

16    discount his complaints because it was not inconsistent with his complaints).

17         The second ground cited by the ALJ for finding plaintiff less credible was

18    her "vigorous exercise" several times a week, including cardiovascular exercise.

19    AR at 16. While limited exercise, particularly if part of a treatment plan, would

20    not detract from a claimant's credibility, an exercise routine inconsistent with a

21    claimant's purported limitations would. *See Vertigan v. Halter*, 260 F.3d 1044,

22    1050 (9th Cir. 2001) (the mere fact that a claimant can engage in limited walking

23    for exercise does not detract from her credibility as to her overall disability).

24    Plaintiff reported to Dr. James R. Wilson, an emergency room physician, that she

25    exercised two to three times a week for an hour at a time, half of it which

26    consisted of cardiovascular work on a treadmill. AR at 1013. Although the ALJ

27    characterized plaintiff's exercise as "vigorous," the actual intensity of plaintiff's

28

1   exercise is unclear.  Nevertheless, plaintiff's statement about engaging in exercise,

2   including thirty minutes of cardiovascular, contradicts her statement that she can

3   only walk ten minutes before needing to rest for fifteen minutes.  *Compare id*. at

4   216, 1013.  Moreover, contrary to plaintiff's assertion, there is no evidence that a

5   physician advised her to engage in this exercise program.  Accordingly, plaintiff's

6   exercise routine is a clear and convincing reason for finding plaintiff less credible.

7        The ALJ's third, fourth and sixth grounds for discounting plaintiff's

8   credibility were that medicine controlled her seizures and conservative treatment

9   alleviated her musculoskeletal symptoms.  *Id*. at 16; *see Warre v. Comm'r*, 439

10  F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

11  with medication are not disabling for purposes of determining eligibility for SSI

12  benefits."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of

13  conservative treatment is sufficient to discount a claimant's testimony regarding

14  severity of an impairment.") (internal quotation marks and citation omitted).

15  Plaintiff does not appear to dispute that medication effectively controls her

16  seizures.  As for the conservative medical management of her musculoskeletal

17  symptoms, plaintiff contends that the narcotic medication and non-steroidal

18  injections have not controlled her pain.  P. Mem. at 7.

19       The Ninth Circuit and its district courts have generally viewed the use of

20  narcotic pain medication as non-conservative treatment.  *See LapierreGutt v.*

21  *Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of

22  "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger

23  point injections was not conservative); *see, e.g., Christie v. Astrue*, 2011 WL

24  4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid

25  injections, trigger point injections, epidural injections, and cervical traction was

26  not conservative).   But in these cases, the claimants typically used narcotic

27  medications in conjunction with other treatments that were also not conservative.

28

11

1   The use of narcotic medication, by itself, may be considered conservative

2   treatment.  *See Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011)

3   (finding that plaintiff responded to conservative treatment, which included the use

4   of narcotic medication); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan.

5   7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic

6   medication at various times, plaintiff's treatment as a whole was conservative);

7   *Grisel v. Colvin*, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (use of

8   narcotic pain medication was conservative when it provided relief and was not in

9   combination with other treatments).

10       Here, plaintiff was treated almost exclusively with anti-inflammatory

11   medication and injections and narcotic pain medication.[4]  *See, e.g.*, AR at 565,612,

12   678, 680, 684, 941; *see Tommasetti*, 533 F.3d at 1040 (describing the use of an

13   anti-inflammatory as conservative); *Garcia v. Colvin*, 2014 WL 6750288, at *4

14   (C.D. Cal. Dec. 1, 2014) (Torodal injection constituted conservative care);

15   *Peterson v. Colvin*, 2014 WL 583239, at *5 (C.D. Cal. Feb. 12, 2014) (anti-

16   inflammatory injection was considered conservative treatment).  In 2010, plaintiff

17   received one Decadron injection, a corticosteroid anti-inflammatory.  *See id.* at

18   684.  While regular steroid injections are generally regarded as non-conservative

19   treatment, a single steroid injection is not viewed the same.  *See Veliz v. Colvin*,

20   2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (single steroid injection did

21   not undermine ALJ's finding that plaintiff received conservative treatment);

22   *Gonzales v. Colvin*, 2015 WL 685347, at *11 (C.D. Cal. Feb. 18, 2015) (treatment

23   consisting of medication and a single steroid injection was conservative).

24   Therefore, as a whole, substantial evidence supports the ALJ's finding that

25   _____

26       [4]   On one occasion, plaintiff reported to an emergency room physician that she
     had back surgery scheduled.  AR at 311.  On another occasion, plaintiff told an
27   emergency room physician that she was scheduled for a lumbar epidural treatment.
     *Id.* at 485.  There is no evidence to support either statement.
28

1    plaintiff received conservative treatment.

2         Plaintiff further contends that the treatment did not alleviate her pain and

3    thus was not a basis for discounting her credibility. *See Tommasetti*, 533 F.3d at

4    1040 (plaintiff's favorable response to conservative treatment undermined her

5    allegations). Plaintiff's frequent trips to the emergency room support her

6    contention that the pain medication and Toradol injections were not effective. But

7    this, as will be discussed below, has to be viewed in conjunction with plaintiff's

8    failure to seek the care of a private physician to provide continuous treatment.

9    Because plaintiff has never sought actual treatment, as opposed to emergency care,

10   for her pain, it cannot be said that plaintiff's treatment plan was ineffective when

11   there was no treatment plan. As such, the evidence can reasonably support either

12   affirming or reversing the ALJ's finding that plaintiff received conservative care

13   and that it was effective. In this situation, this court must defer to the ALJ's

14   finding.

15        Finally, the ALJ discounted plaintiff's credibility because she did not follow

16   up with her primary care physician. AR at 16; *see Tommasetti*, 533 F.3d at 1039.

17   Although plaintiff reported pain, other than a handful of visits to a worker's

18   compensation physician, plaintiff did not seek treatment from a private physician.

19   Instead, plaintiff relied on the emergency departments of various hospitals. *See,*

20   *e.g. id.* at 418, 522-23, 526, 561, 684-85. At many of these visits, the emergency

21   room physician instructed her to follow up with her own private physician. *See,*

22   *e.g., id*. at 419, 523, 608, 624, 685. On at least four occasions, plaintiff reported to

23   an emergency room physician that she had an appointment with a treating

24   physician already scheduled or would follow up with her physician, but the record

25   contains no evidence of any visit to a primary care or other physician.[5] *See id.* at

26

27        [5]   There is evidence suggesting that plaintiff has a private, treating physician

28   and receives physical therapy, but there are no records of either. *See* AR at 176,

1 | 311, 533, 553, 685.  In addition, on at least three occasions, plaintiff left the

2 | hospital emergency room without a full evaluation or receiving instructions – once

3 | after she already obtained her prescription and once after the physician refused to

4 | prescribe narcotics.  *See id.* at 312, 453, 568-69.  Such actions suggest that

5 | plaintiff's primary concern was temporary relief rather than permanent relief.  *See*

6 | *id.* at 568.  Because plaintiff never pursued regular treatment or followed up on the

7 | emergency room physicians' recommendations, the ALJ properly found that her

8 | lack of treatment was a sufficient reason to find plaintiff less credible.

9 |       Accordingly, although plaintiff's work activity in 2011 was not a clear and

10 | convincing reason supported by substantial evidence, the ALJ's remaining reasons

11 | for finding plaintiff less credible were clear and convincing and supported by

12 | substantial evidence.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195-97 (9th Cir.

13 | 2004) (ALJ erred in relying on one of several reasons in support of an adverse

14 | credibility determination, but such error was harmless because the ALJ's

15 | remaining reasons and ultimate credibility determination were adequately

16 | supported by substantial evidence in the record).

17 |       **2.**    **Lay Witness – Plaintiff's Daughter**

18 |       Plaintiff contends that the ALJ improperly discounted her daughter's

19 | credibility without providing sufficient reasons.  P. Mem. at 9-10.  Plaintiff's

20 | daughter Raylene Munguia, submitted a Third Party Function Report.  AR at 179-

21 | 86.  In that report, Munguia reported, inter alia, that she helped plaintiff with

22 | errands, plaintiff did not sleep well, plaintiff sometimes needed help dressing,

23 | plaintiff was in constant pain, plaintiff had concentration issues, and plaintiff

24 | could stand for no more than seven minutes at a time.  *See id.*

25 |       "[L]ay testimony as to a claimant's symptoms or how an impairment affects

26 | ability to work *is* competent evidence and therefore *cannot* be disregarded without

27 | _____

28 | 179, 311-12, 653.

1  comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

2  quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see*

3  *also* 20 C.F.R.§§ 404.1513(d)(4), 416. 913(d)(4) (explaining that the

4  Commissioner will consider all evidence from "non-medical sources[,]" including

5  "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors,

6  and clergy").  The ALJ may only discount the testimony of lay witnesses if he

7  provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*,

8  12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

9  2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an

10  ALJ must take into account, unless he or she expressly determines to disregard

11  such testimony and give reasons germane to each witness for doing so.").

12     Here, the ALJ discounted Munguia's opinion on the grounds that it was

13  "exaggerated, embellished, and self-serving."  AR at 16.  Specifically, the ALJ

14  found that: (1) Munguia's comments that plaintiff could no longer work, perform

15  her own daily routines, and exercise were contradicted by plaintiff's own

16  statements; (2) contrary to Munguia's claim that plaintiff did not sleep well,

17  plaintiff did not complain of insomnia; (3) Munguia's statements regarding

18  plaintiff's self-care activities were contradicted by plaintiff; and (4) plaintiff

19  contradicted Munguia's statement about her ability to perform household chores.

20  *Id.*  The ALJ's overarching reason for discounting Munguia's report was that it

21  was contradicted by plaintiff's own statements.  Some of the ALJ's findings are

22  germane and supported by substantial evidence.

23     First, the ALJ found that Munguia's response that plaintiff could no longer

24  work, do her own daily routines, and exercise was contradicted by the fact that

25  plaintiff worked in 2011 and engaged in a "vigorous" home exercise program.  *Id.*

26  at 16.  As discussed above, plaintiff's work did not constitute substantial gainful

27  activity and there was insufficient evidence as to the duration, intensity, and type

28

1   of work that was performed, as well as the reasons for starting and stopping.

2   Thus, it was not germane.  The ALJ also did not explain how plaintiff's statements

3   contradicted Munguia's statement regarding plaintiff's daily routines.  As for

4   Munguia's statement about plaintiff's ability to exercise, as discussed above,

5   plaintiff's statements to Dr. Wilson do contradict this specific statement.

6   Therefore, although plaintiff's remarks about her work and daily routine were not

7   substantial evidence of contradictory statements, the conflicting statement about

8   plaintiff's ability exercise constituted a germane reason supported by substantial

9   evidence for finding Munguia less credible.

10      Second, the ALJ concluded that plaintiff's statement to Dr. Cash that she

11   had no difficulty with self-care activities and could perform them independently

12   contradicted Munguia's claim that plaintiff required assistance.  Munguia wrote

13   that plaintiff "sometimes" needed help with putting on shoes and pants, sometimes

14   was in too much pain to shave, and needed help to retrieve and move certain

15   objects.  AR at 180.  The statement cited by the ALJ as contradictory was

16   plaintiff's reporting to Dr. Cash that she had no problems with self-care.  *Id.* at

17   956.  The statement reported by Dr. Cash was so brief, and the limitations

18   described by Munguia so minimal, that it is a stretch to conclude that these

19   statements were contradictory.  Nonetheless, they technically do conflict to a

20   limited extent.

21      The third reason the ALJ gave for discounting Munguia's report was that

22   although she reported that plaintiff woke up repeatedly at night, plaintiff never

23   asserted insomnia or difficulty sleeping.  AR at 16.  The ALJ was incorrect.  In her

24   Function Report (which Munguia completed for her (*see id.* at 218)), plaintiff

25   stated that she cannot sleep because of constant pain.  *Id.* at 212.  Moreover, she

26   told Dr. Cash that she had sleep difficulties and was slower in all activities due to

27   fatigue and pain.  *Id.* at 956.

28

1    Finally, the ALJ found Munguia not credible because she stated that
2 plaintiff did not do housework and yard work, while plaintiff told Dr. Cash that
3 she performed household chores. *Id.* at 16, 181, 956. The ALJ properly noted this
4 clear inconsistency was a basis for a negative credibility finding.

5    Therefore, although not to the "exaggerated" and "embellished" levels the
6 ALJ describes, the ALJ cited at least two arguably germane reasons for dismissing
7 Munguia's report.

8    In sum, the ALJ provided some clear and convincing reasons supported by
9 substantial evidence for finding plaintiff less credible and some germane reasons
10 supported by substantial evidence for discounting Munguia's credibility. As such,
11 the ALJ did not err in discounting plaintiff's and her daughter's credibility.

12 **C.    The ALJ Erred at Step Five**

13    Plaintiff argues that the ALJ erred by relying on the vocational expert's
14 testimony. P. Mem. at 11-13. Specifically, plaintiff contends that even assuming
15 the ALJ's RFC determination was correct, the ALJ still erred because the VE's
16 proffered job numbers were clearly erroneous and unreliable. *Id.* Plaintiff argues
17 the ALJ's step five finding was thus not supported by substantial evidence. *Id.*

18    At step five, the burden shifts to the Commissioner to show that the
19 claimant retains the ability to perform other gainful activity. *Lounsburry v.*
20 *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a
21 claimant is not disabled at step five, the Commissioner must provide evidence
22 demonstrating that other work exists in significant numbers in the national
23 economy that the claimant can perform, given his or her age, education, work
24 experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f). The Commissioner
25 may satisfy this burden through the testimony of a vocational expert. *Lounsburry*,
26 468 F.3d at 1114.

27    In response to a hypothetical that includes the limitations the ALJ found
28

1   credible, a VE may testify as to "(1) what jobs the claimant, given his or her

2   [RFC], would be able to do; and (2) the availability of such jobs in the national

3   economy." *Tackett*, 180 F.3d at 1101.   "A VE's recognized expertise provides the

4   necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d

5   1211, 1218 (9th Cir. 2005).   Accordingly, VE testimony is substantial evidence.

6   *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("'[T]he ALJ was

7   within his rights to rely solely on the vocational expert's testimony.'") (quoting

8   *Conn v. Sec'y*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Bayliss*, 427 F.3d at

9   1218, n.4 (Federal Rules of Evidence do not apply in social security hearings).

10  But where the VE testimony is fundamentally flawed, remand is appropriate. *See,*

11  *e.g., Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required

12  where VE provided employment data for a different occupation than the one he

13  opined claimant could perform).

14       ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in

15  evaluating whether the claimant is able to perform other work in the national

16  economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations

17  omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is a source of

18  reliable job information).   The DOT is the rebuttable presumptive authority on job

19  classifications. *Johnson*, 60 F.3d at 1435.   An ALJ may not rely on a VE's

20  testimony regarding the requirements of a particular job without first inquiring

21  whether the testimony conflicts with the DOT, and if so, the reasons therefor.

22  *Massachi*, 486 F.3d at 1152-53 (discussing Social Security Ruling 00-4p).

23       At the November 2, 2012 hearing, in response to the ALJ's hypothetical, the

24  VE testified that a person with plaintiff's RFC would be able to perform the jobs

25  of lens gauger (DOT 716.687-030), table worker (DOT 739.687-182), and

26  addresser (DOT 209.587-010).   AR at 33-34.   The VE testified that there were

27  approximately 464,000 jobs nationally and 50,000 jobs regionally for lens gauger,

28

18

1   410,000 jobs nationally and 47,000 jobs regionally for table worker, and 724,000

2   jobs nationally and 97,000 jobs regionally for addresser. *Id.* at 34.  The VE

3   testified that he derived the numbers from the Bureau of Labor Statistics ("BLS")

4   and cross-referenced the numbers with Occupational Employment Statistics

5   ("OES") and Employment Development Department ("EDD") data. *Id.*

6        Plaintiff contends that the VE's testimony cannot constitute substantial

7   evidence because the VE's job numbers do not correspond to BLS data.  P. Mem.

8   at 12-13.  In support, plaintiff presents evidence that purports to undermine the

9   reliability of the VE's testimony.  *Id.*, Exs. A-C.  Specifically, plaintiff asserts that

10  the BLS reports that the jobs of lens gauger and table worker fall into an OES

11  group consisting of 782 occupations and there are an estimated 450,000 jobs

12  nationally for that group, and the job of addresser falls into an OES group

13  consisting of seven occupations and there are an estimated 96,000 jobs nationally

14  for that group.  *Id.* at 12, Exs. A-C.  In contrast, the VE testified that there were

15  464,000 jobs nationally for lens gauger, 410,000 jobs nationally for table worker,

16  and 724,000 jobs nationally for addresser.  AR at 34.  Plaintiff maintains that the

17  VE's numbers are impossible given that it would mean that there are about double

18  the number of lens gauger and table worker jobs nationally than for the entire OES

19  group of 782 occupations.  P. Mem. at 12.  Similarly, the VE's number reflect

20  more jobs nationally for addresser than the OES group of seven occupations.  *Id.*

21        Defendant is correct that a lay interpretation of raw job numbers, by itself, is

22  insufficient to undermine a VE's analysis.  *See Cardone v. Colvin*, 2014 WL

23  1516537, at *5 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw

24  vocational data derived . . . does not undermine the reliability of the VE's

25  opinion."); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. Nov. 21, 2013)

26  ("[L]ay assessment of the data derived from [job data sources] does not undermine

27  the reliability of the VE's testimony" where the plaintiff "failed to introduced any

28

1   VE opinion interpreting the data from those sources and the significance of the

2   information reflected on the various reports is not entirely clear."); *Valenzuela v.*

3   *Colvin*, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) (rejecting plaintiff's

4   assessment, in part, because it "was unaccompanied by any analysis or explanation

5   from a vocational expert or other expert source to put the raw data into context").

6   But when the VE's job numbers are fundamentally flawed, remand is appropriate.

7   *See Farias*, 519 Fed. Appx. at 440 (remanding because "[n]o 'reasonable mind'

8   could accept the employment numbers proffered by the VE.").

9      Here, the raw numbers indicate that the VE's jobs numbers are

10  fundamentally flawed.[6] First, the VE testified that there 464,000 lens gauger jobs

11  and 410,000 table worker jobs nationally.  Both jobs fall under the same OES

12  category – inspectors, testers, sorters, samplers, and weighers – which comprises

13  of 782 occupations.  According to the BLS and OES  data, there are approximately

14  454,010 jobs nationally for this category.  The VE's numbers for lens gauger and

15  table worker – just two out of the 782 occupations – exceed the OES *category*

16  numbers by more than double.  Likewise, the VE's testimony that there are

17  724,000 addresser jobs nationally is more than seven times the number of jobs

18  listed in its OES *category*.  It does not appear that these numbers can be reconciled

19  even with expert analysis.  Second, the VE appears to admit to providing numbers

20  for the OES category rather than specific jobs.  When asked about the number of

21  addresser jobs, the VE testified that he believed there were nine sub-categories of

22  addresser under the OES and that the approximately 100,000 regional addresser

23

24       6   The EDD data, which is California specific, should only affect the analysis

25  of the regional numbers.  Because the VE testified that he also relied on the EDD

26  and plaintiff presented no evidence concerning the EDD data, this court will only

     discuss the national job numbers.  This court assumes, however, that if plaintiff's

27  national job numbers are fundamentally flawed, then his regional job numbers are

28  likewise flawed.

1   jobs included all the sub-categories.  *See* AR at 35. According to the BLS, the
2   addresser job is one of seven specialty occupations, each with their own DOT
3   codes, in the OES group of word processors and typists and not the other way
4   around.  In other words, addresser is the sub-category of the OES group and not
5   the reverse.  The VE should be testifying to the number of jobs for addresser and
6   not the OES category that the addresser job falls under.  *See Darling v. Colvin*,
7   2013 WL 4768038, at *4-*6 (C.D. Cal. Sept. 4, 2013) (remanding because the
8   VE's proffered job numbers may have pertained to the entire OES statistical group
9   rather than the individual job).  Although the VE did not testify that he applied this
10  logic to the jobs of lens gauger and table worker, the court assumes he did.

11      Thus, although a plaintiff's lay analysis is generally insufficient to
12  undermine the reliability of a VE's testimony, here, because the raw numbers raise
13  questions about the reliability of the VE's testimony and both his numbers and
14  methodology appear to be fundamentally flawed, the ALJ erred in relying on the
15  VE's testimony at step five.  The ALJ must reexamine the VE to further develop
16  the record in this regard.

## V.

## <u>REMAND IS APPROPRIATE</u>

19      The decision whether to remand for further proceedings or reverse and
20  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,
21  888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this
22  discretion to direct an immediate award of benefits where: "(1) the record has been
23  fully developed and further administrative proceedings would serve no useful
24  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
25  evidence, whether claimant testimony or medical opinions; and (3) if the
26  improperly discredited evidence were credited as true, the ALJ would be required
27  to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020

(9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to further develop the record.  On remand, the ALJ shall reconsider the opinion provided by Dr. Cash and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ should also further develop the record and inquire about and obtain additional medical records, if any.  In addition, the ALJ must obtain further testimony from a VE to clarify the job numbers.  The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 13, 2015

SHERI PYM
United States Magistrate Judge